Argued January 7, affirmed February 27, 1963

# THE UNITED STATES NATIONAL BANK *v.*
# STATE TAX COMMISSION
### 378 P. 2d 989

*Donald J. Georgeson,* Portland, argued the cause for appellant. With him on the briefs were Charles P. Duffy and Davidson, Duffy & Stout, Portland.

*John C. Mull,* Assistant Attorney General, Salem, argued the cause for respondents. With him on the brief were Robert Y. Thornton, Attorney General, Salem and Richard Rink, Assistant Attorney General, Salem.

Before McAllister, Chief Justice, and Rossman, Perry, Sloan, O'Connell, Goodwin and Denecke, Justices.

SLOAN, J.

The State Tax Commission sustained deficiency assessments in respect to income tax returns filed for the years 1957 and 1958 by plaintiff bank as the executor of the estate of Frank M. Penepacker, deceased. Plaintiff sought review of the commission's order in the circuit court as provided by ORS 314.460 prior to the amendment of that section in 1961. The trial court affirmed the commission. Plaintiff appeals.

On February 25, 1955, Mr. Penepacker was the owner of all of the shares of stock of Pacific Building Materials Company, an Oregon corporation. We will refer to it as "Pacific." On that date he executed an agreement with Pacific whereby the latter agreed, upon the death of Mr. Penepacker, to redeem from his estate shares of the Pacific stock sufficient to pay estate and inheritance taxes, costs of administration

and funeral expenses. At that time Mr. Penepacker assigned to Pacific certain life insurance policies which insured the life of Penepacker.

Mr. Penepacker was also the owner of 38 shares of stock in Readymix Concrete Company, also an Oregon corporation, to be referred to as "Readymix." All of the remaining outstanding shares of stock of Readymix were owned by Pacific. Mr. Penepacker retained the same stock ownership in both companies on the date of his death in September 1957. The stock passed into the hands of plaintiff as executor.

In December, 1957 Pacific received 27½ shares of its stock from the estate and the estate received cash from Pacific in the approximate amount of $127,000. At the same time Readymix received 12 shares of the stock held by the estate and paid to the estate approximately $76,000. In January, 1958 Pacific received an additional 32 shares of its stock from the estate and paid to the estate, in cash, approximately $148,000. At the date of Mr. Penepacker's death the two corporations had a total earned surplus in excess of one million dollars.

In the before mentioned tax returns for the years 1957 and 1958 plaintiff reported the sums received as a "distribution in partial liquidation" of the two corporations and thereby sought the tax advantages of a capital transaction. The commission refused to treat the transaction as a partial liquidation and assessed the amounts received as dividends subject to ordinary income tax rates. This is the conflict we are called upon to resolve.

Essentially, this case requires that we decide the meaning to be gleaned from two sections of the personal income tax laws of Oregon and the commission's

regulations in respect thereto. ORS 316.010 (6) defines a dividend:

> " 'Dividend' means any distribution (except a distribution in complete or partial liquidation of a corporation) made by a corporation to its stockholders, whether in money or in other property (a) out of its earnings or profits whenever accumulated or * * *."

ORS 316.010 (5) defines a "Distribution in partial liquidation" to be:

> " 'Distribution in partial liquidation' means a distribution, or one of a series of distributions, by a corporation in complete cancelation or redemption of a part of its stock."

The language of the commission's regulations relating to these statutes which has particular significance to our decision reads:

> "Reg. 6.010(5). Definition: 'Distribution in Partial Liquidation.' A distribution in partial liquidation ordinarily occurs when a corporation redeems all of the shares of a particular issue of its stock, or when there is any one of a series of distributions in complete cancellation or redemption of a portion of an issue of the stock of a corporation. There may be a distribution in partial liquidation when the redemption by the corporation is made pro rata among the shareholders, provided that there has been at that time a bona fide curtailment of corporate activity."

> "Reg. 6.010(6)-(B). Distribution Taxable as Dividends. Any corporate payment or distribution to a stockholder or stockholders (whether or not pro rata) that is in effect essentially equivalent to a dividend is taxable as such.
> * * * * *
> "If a corporation cancels or redeems its stock (whether or not such stock was issued as a stock dividend) at such time and in such manner as to

make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend, the amount so distributed in redemption or cancellation of the stock, to the extent that it represents a distribution of earnings or profits, regardless of when accumulated, shall be treated as a taxable dividend."

The last paragraph of Regulation 6.010(6), just quoted, is taken, verbatim, from § 115(g) of Federal Internal Revenue Code of 1939. The 1939 Code is the one relied on by the parties to make comparative analysis between the Federal Code and the Oregon Personal Income Tax Act of 1953. Otherwise the Federal statutory definition of a dividend and a distribution in partial liquidation are substantially identical to the Oregon statutes we have quoted. The fact that Congress saw fit to include in a statute the requirement that a distribution which is "essentially equivalent" to a dividend shall be treated as a dividend is the difference which divides the parties to this proceeding. In other words, in the Federal Code the application of an "essentially equivalent" test is made certain by statute. In Oregon the test is expressed only in the commission's regulations.

Following that part of Regulation 6.010(B) just mentioned the Regulation then proceeds to further explain the commission's meaning:

"The question whether a distribution in connection with a cancellation or redemption of stock is essentially equivalent to the distribution of a taxable dividend depends upon the circumstances of each case. A cancellation or redemption by a corporation of all of the stock of a particular stockholder, so that the stockholder ceases to be interested in the affairs of the corporation, does not effect a distribution of a taxable dividend. A bona

fide distribution in complete cancellation or redemption of all of the stock of a corporation, or one of a series of bona fide distributions in complete cancellation or redemption of all of the stock of a corporation, is not essentially equivalent to the distribution of a taxable dividend. In all cases the facts and circumstances should be reported to the commission for its determination whether the distribution, or any part thereof, is essentially equivalent to the distribution of a taxable dividend."

Therefore, plaintiff argues, the regulation of the Oregon Tax Commission, which imposes the same test as the Federal statute, exceeds the regulatory power of the commission. Plaintiff would have us hold that the regulation imposes a tax not contemplated by the statute; that the regulation imposes a tax upon a transaction that would not be taxable by reference to the statute alone.

In this case we are not compelled to decide whether the regulation in question was legislative or interpretive, or if ORS 314.815 gives to the commission the power to adopt legislative regulations. 1 Davis, Administrative Law Treatise, 1958, Chapter 5; and also Davis, Administrative Rules—Interpretive, Legislative and Retroactive, 1948, 57 Yale L J 919; Eisenstein, Reflections in Tax Administration, 1945, 58 Harv L Rev 477; Lee, Legislative and Interpretive Regulations, 1940, 29 Georgetown L J 1; Surrey, Scope of Treasury Regulations, 1940, 88 Pa L Rev 556. For the purpose of this case we will assume that the challenged regulation is interpretive only.

■ In fact, this regulation adds nothing that is not otherwise to be read into the statute. The regulation does add meaning to the words "distribution in partial liquidation" and helps to distinguish between a dis-

tribution that is truly a partial liquidation and one that is a partial liquidation in name only. In the situation now under review it would make little difference if there were no regulation at all. Our decision would be the same. Accordingly, we hold that the regulation does not necessarily make a distribution taxable as a dividend which would otherwise be taxable as a distribution in partial liquidation.

The regulation does no more than add some meaning to the "bare bones." It requires no citation of authority to know that statutory law, particularly statutes relating to income taxes, must use words that defy precise definition or application to a given case. Statutory words like "income," "expense," "dividend," "gift," "salary," "interest," "owner," to name only a few, compel administrative or judicial interpretation to provide meaning.

Our review of the history of the Federal Statute, § 115(g) of the 1939 Code causes us to believe that the section was adopted for purposes of clarification. The particular circumstances created by a decision of the Supreme Court,—*Eisner v. Macomber,* 1919, 252 US 189, 40 S Ct 189, 64 L Ed 521, which held a statute to be unconstitutional that attempted to tax distributions of stock dividends—created a possible problem in the Federal taxation of a distribution by a corporation to its stockholders that has not existed in Oregon. Report No. 1, 69th Congress, 1st Session, House Committee on Ways and Means, page 5, 1939-1, on the Revenue Bill of 1926, when § 115(g) was first enacted, expressly stated that the purpose of the act was "* * * to make clear that such a transaction is taxable." The "transaction" mentioned in the report is one similar in form to the transaction at hand. The committee report stated that it was necessary to add

the section described because "* * * it has been contended that under existing law a corporation, especially one which has only a few stockholders, might be able to make a distribution · * * * which would have the same effect as a taxable dividend . * * * [but would not be taxed]." It is our opinion that the Committee stated that it is avoiding a possible loophole not an actual one.

In *Comn'r v. Estate of Bedford,* 1945, 325 US 283, 290, 65 S Ct 1157, 89 L Ed 1611, we find this brief but aptly expressed duty of the court when interpreting a statute like the one in question. It is to find "* * * the meaning which will best accord with the aims of the language, the practical administration of the law and relevant judicial construction."

In this instance there is no difficulty in finding the "aim" of the statute and the "practical administration of the law * * *." The purpose is to tax, as a dividend, every distribution made by a corporation to its stockholders that is clearly not a distribution in "* * * complete or partial liquidation * * *." It could be said that the definition of a partial liquidation—"* * * a distribution * * * by a corporation in complete cancellation or redemption of a part of its stock"—is clear, unambiguous and requires no interpretation. If a literal meaning of these words were to apply then any closely held corporation could, by order of its board of directors, achieve every purpose of a dividend but avoid the intended taxable incidence to its stockholders by a pro rata cancellation or redemption of stock and a corresponding distribution of cash. In other words, the character of the distribution would be determined by the appropriate words used by the board of directors and not by the

true purpose accomplished. It could depend entirely on a matter of form and not of substance. *United States v. Phellis,* 1921, 257 US 156, 42 S Ct 63, 66 L Ed 180. The stockholder of a closely held corporation would never be obliged to pay the tax imposed on dividend income. To attribute such an aim or purpose to the statute would be little short of absurd.

■ We hold that the statute implies that the redemption or cancellation of the stock mentioned in ORS 316.010 (5) must be accomplished in respect to some liquidating process. An attempted cancellation of shares that retains to each stockholder the same relative ownership of stock, without some other indicia of actual liquidation, would not be deemed to be a liquidation in partial distribution. We reiterate that the regulation now in question does no more than interpret the statute in like manner. That is not to say that the regulation is good because it would have been similarly drafted by this court. It is to say that the regulation is "* * * not inconsistent with legislative enactments * * *." ORS 314.815. We agree with a statement found in *Robinson v. Commissioner,* (1934 5th Cir) 69 F2d 972, 973: "No statute is needed to make the facts speak the truth."

The parties cite and discuss many of the numerous federal decisions that have decided whether a given corporate distribution was the equivalent of a dividend. These decisions have developed a number of criteria by which the federal courts test a given transaction. In *Earle v. Woodlaw,* (1957 9th Cir) 245 F2d 119, 51 AFTR 513, cert den 354 US 942, the court found that ten such criteria had been relied on in the federal decisions. In 1 Mertens, Law of Federal Income Taxation, 1962 Rev., § 9.100, beginning at page

210, is found a comprehensive study of the decisions. A resulting summary is found at page 219:

"In some opinions lengthy lists of criteria to be considered in deciding the net effect of the redemption may be found.* But despite the attention given to other factors, the two most significant factors have been the presence of a contraction of the business on the corporate level, or on the stockholder level the termination or significant reduction in the interest of the stockholder in the corporation. Although there are a few cases in which the distribution has been held not to have the net effect of a dividend when there was neither a contraction of the business nor a substantially disproportionate redemption,* the distinct trend has been to hold that there was a taxable dividend when neither of these two factors is present.*" (Footnotes omitted).

Another test frequently applied and considered by some to be "one of the most important and most carefully considered single factors entering into the analysis of this problem * * *" is to find if the distribution was the result of a legitimate purpose of the corporation and for the benefit of the corporation or was it originated by and done for the benefit of the stockholders. Gutkin, Corporate Distributions, 4th Ann. NYU Institute of Federal Taxation, 1946, 565 at page 570; Darrell, Corporate Liquidation and the Federal Income Tax, 1941, 89 Pa L Rev 907, 914; *Rheinstrom v. Conner*, 1942 6th Cir, 125 F2d 790; *Earle v. Woodlaw*, supra, 245 F2d at 127.

■ It matters not at all, in the instant case, which of the several criteria found in the decisions, or others that have been proposed, Nolan, Taxation of Stock Redemptions, 1951-52, 65 Harv L Rev 255, 261, the distribution in question cannot qualify as a partial liquidation. It fails to meet any of the tests that are

to be found. The funds received by plaintiff were exactly the same as, or the equivalent of and had the effect of a dividend.

The parties engage in some argument as to whether or not the two corporations "redeemed" the stock. We think it makes little difference what was done with the surrendered stock. Each corporation could have burned the certificates or marked them "redeemed" or "canceled" or held them as treasury stock. Or it would have been immaterial if the stock had never changed hands at all. The ultimate result was the same. The relationship between plaintiff, as the holder of the shares when the distributions were made, and the two corporations was exactly the same before and after the distributions. Plaintiff still retained every incidence of full ownership or control of all of the stock in the corporations. Nothing had been changed except a paper transaction. The reduction in the number of shares held by plaintiff was meaningless.

We are aware that in 1960 Congress added § 115(g) (3), (now found at 26 USCA 303) which permitted redemptions of capital stock in closely held corporations from an estate of a substantial stockholder therein without being treated as a dividend. The Congress found that it was beneficial to a system of free enterprise to avoid a forced sale or liquidation of a family held corporation in order to pay death taxes. It is probable that the transaction in question was planned and adopted to qualify for the federal tax benefits. The Oregon Assembly has not decided that a similar benefit should be accorded Oregon taxpayers. We must take the statutes as we find them.

For the reasons stated the decree is affirmed.

ROSSMAN, J., dissenting.

Prior to 1953 one Harold Eykelbosch, now deceased, and Frank M. Penepacker, the decedent whose estate is the plaintiff in this case, were the owners of all the corporate stock of the two corporations which are mentioned in the prevailing opinion. Each of the two men owned one-half of the stock. In April of 1953 Eykelbosch died and shortly the corporations redeemed all of his stock. When that had been done Penepacker's stock became the sole outstanding stock and represented sole ownership of the two corporations. In order to obtain funds with which to redeem the stock held by Eykelbosch's estate it became necessary to obtain a sizeable bank loan.

After Penepacker became sole owner of the stock of the two corporations he attempted to sell the stock, the corporations, or their assets. Negotiations to that end were under way when death overtook him in 1957. Prior to his death he and Pacific Building Materials Company—one of the two aforementioned corporations—entered into the agreement mentioned in the prevailing opinion which required Pacific Building Materials Company to redeem enough stock held by Penepacker and discharge the obligations attendant upon Penepacker's death—such as administration, funeral, tax, and similar liabilities. Since he had been endeavoring to sell the assets of the corporations, partial liquidation as attempted by the agreement was natural and would aid in the sale of the businesses. The fact that the agreement was entered into in good faith and for an understandable purpose surely should be persuasive as to its nature.

After Penepacker's death the assets of the two corporations were sold and the corporations were dis-

solved. They no longer exist. Without further recital of the facts, I express my belief that the redemption of the stock should be given effect as a distribution made in liquidation and not a dividend.

I dissent.