Argued September 5, reversed November 20, 1975

# UNIVERSITY OF OREGON CO-OPERATIVE
## STORE (non profit), *Appellant, v.*
# DEPARTMENT OF REVENUE, *Respondent.*
### 542 P2d 900

*James P. Harrang* and *John L. Franklin* of Johnson, Johnson & Harrang, Eugene, argued the cause and filed briefs for appellant.

*Alfred B. Thomas,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief was Lee Johnson, Attorney General.

Before McALLISTER, Presiding Judge, and DENECKE, HOLMAN, TONGUE, HOWELL, and BRYSON, Justices.

McALLISTER, J.

The University of Oregon Co-Operative Store seeks exemption from corporate excise taxes payable to the State of Oregon under ORS Chapter 317 and a refund for taxes paid in tax years 1967, 1968 and 1969. The Co-Op bases its claim for exemption on ORS 317.-080(4).[1] A hearing was held before the Department

---

[1]

"317.080 *Exempt corporations.* The following corporations are exempt from the taxes imposed by this chapter:

\* \* \* \* \*

"(4) Corporations \* \* \* organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes \* \* \* no part of the net earnings of which inures to the benefit of any private stockholder or individual."

of Revenue and the Co-Op's claim for exemption was denied.[2] The Co-Op appealed to the Oregon Tax Court, which sustained the Department of Revenue's opinion and order.[3] The Co-Op has appealed from the decree of the Tax Court. We reverse.

The Co-Op was organized by the Associated Students of the University of Oregon in 1920 to fill the book and supply needs of the faculty and the students. Membership in the Co-Op is limited to students, faculty and staff of the University of Oregon. The board of directors during the period involved in this case consisted of seven members, two of whom were elected by the faculty members and five of whom were elected by the student members. Members pay an annual membership fee of fifty cents.

Article II of the Articles of Incorporation of the Co-Op state the corporate purpose as follows:

"The purpose of this association, and the enterprise, business and pursuit in which it propose[s] to engage is to make available to the students at the University of Oregon and persons directly associated with such college the benefits of cooperative purchasing and merchandising; to unite such persons in a cooperative group so that they may obtain the maximum buying power possible from their income; and to afford to such persons the articles, supplies, and materials necessary and desirable for school, living, and recreational purposes while attending or associated with the University of Oregon."

In the event of dissolution or liquidation of the Co-Op, the articles provide that all of the assets will inure to the University of Oregon.

---

[2] Department of Revenue Opinion & Order I-72-50 (November 27, 1972).

[3] Tax Court No. 722 (August 7, 1974).

Ninety-nine per cent of all the sales by the Co-Op are made to members. No parking is provided for the public, and the Co-Op's advertising is almost all through the student newspaper. The Co-Op is located adjacent to the campus. It is part of the campus mail system and telephone system. It serves as a distribution point for the school newspaper and provides a bulletin board for student notices. The Co-Op also serves as a polling place for student elections.

Sixty per cent of the Co-Op's total volume of sales is textbooks; fifteen per cent is of trade books (primarily reference books recommended by the faculty); twenty per cent is school supplies; five per cent is athletic equipment and non-educational items. The Co-Op's cost of doing business is approximately twenty-one per cent. The standard markup of textbooks sold by the Co-Op is twenty per cent.

Books, both titles and quantity, are ordered upon the request of the faculty. About thirty per cent of the books ordered each year are not sold because of an over-estimate of enrollment, purchases of used books in lieu of new and other causes. This results in a considerable loss to the Co-Op since most publishers will not accept more than a twenty per cent return.

Used books are repurchased from the students at their request as an added service to the student body.

Arrangements have been made by the University of Oregon Business Office for faculty members to order directly from the Co-Op supplementary books and documents necessary for faculty use in classroom instruction. Prior to the Business Office directive, such orders had been placed with the University of Oregon library. The library continues to supply faculty requests for periodicals.

Membership in the Co-Op entitles the member to

an annual rebate. The rebate is computed after all operating expenses have been paid and reasonable sums have been set aside to reserve accounts and the capital account. The surplus funds are then distr'buted based on the percentage of net sales of business transacted with the claiming member during that school year. Unclaimed rebates are used to expand the inventory and as working capital. This eliminates the need to borrow heavily in the summer to purchase books for the fall.

Over eighty per cent of the college bookstores in the nation are owned by the colleges they serve. This is primarily because college bookstores are not profitable.

The Co-Op is a nonprofit corporation, organized under the co-operative corporation laws of the State of Oregon. From 1920 to 1939 the Co-Op leased from a private lessor space off the campus, but immediately adjacent, on the northwest corner of 13th and Kincaid. In 1939 the University of Oregon needed additional classroom space, but the University was unable to fund a new building. The federal government was willing to make a grant to the University under the Public Works Administration program, but the University needed to provide some cash contribution. Upon the invitation of the University to meet this income need, the Co-Op negotiated a twenty-year lease for the basement floor of the projected classroom building. Chapman Hall was built and the Co-Op occupied the basement from 1939 to 1966. The University supplied janitorial service. The Co-Op's move in 1966 was due to its need for more floor space. The Co-Op purchased and moved into a building next to its old location on the northwest corner of 13th and Kincaid.

The sole issue is whether the Co-Op is an exempt

corporation under ORS 137.080(4) as a corporation operated exclusively for educational purposes, no part of the net earnings of which inures to the benefit of any private stockholder or individual.

■ ORS 317.080(4) is borrowed from the Federal Internal Revenue Code.[4] When an Oregon statute has been copied from federal law this court will adopt the interpretation given the federal act by the federal courts. *Pac. Supply Coop. v. State Tax Com.*, 224 Or 556, 560, 356 P2d 939 (1960); *Santiam Fish & Game Ass'n v. Tax Com.*, 229 Or 506, 512, 368 P2d 401 (1962). "In the absence of judicial construction, administrative construction is informative, and unless clearly at variance with the express terms of the statute, is entitled to respect. * * *" 224 Or at 560.

■ In the interpretation of tax law this court has considered as persuasive authority the interpretation given the borrowed statute by the federal courts *after* its adoption in Oregon and as informative the interpretation given the statute by the Internal Revenue Service *after* its adoption in Oregon. 229 Or at 512-532. The reason is that the Oregon legislature has been continually revising the Oregon tax laws[5] to bring them into closer conformity to the federal tax laws and undoubtedly was aware of the federal interpretation given the federal statutes from which the Oregon statutes were copied. *Ore. Physicians' Serv. v. State Tax Com.*, 220 Or 487, 494, 349 P2d 831 (1960). It is apparent that the Oregon legislature intends

[4] Int. Rev. Code § 501(c)(3):

"Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary or educational purposes, * * * no part of the net earnings of which inures to the benefit of any private shareholder or individual, * * *."

[5] Extensive revision of the entire tax code occurred in 1967. Or L 1967, Ch 359.

economic transactions to have similar consequences under both federal and state law. *Hardwick v. Dept. of Revenue*, 272 Or 100, 535 P2d 89 (1975).ⓔ

The Co-Op has been granted tax exemption by the Internal Revenue Service. This is in accord with its interpretation of its code provisions as illustrated by Rev Rul 58-194, 1958-1 Cum Bull 240. In that case a corporation organized for the purpose of operating a book and supply store and a cafeteria and restaurant on the campus of a university sought a tax exemption. The board of directors of the corporation consisted of the president of the university, three elected faculty representatives, and three elected student representatives. Membership was by nominal fee paid by regular employees and students of the university. Nonmembers had to pay a small service charge on bookstore purchases. The Internal Revenue Service found that:

> "* * * the corporation was organized for the purpose of furthering the educational program of the university through the medium of operating facilities for the convenience of the student body of the university and the members of its faculty. * * * Since the corporation is controlled by and serves almost exclusively the members of the faculty and student body and since it is performing functions for their benefit and convenience and in furtherance of the educational program of the university, it is for all intents and purposes an integral part of the university. Therefore, it is apparent that it is a corporation organized and operated exclusively for educational purposes within the mean-

---

ⓔ
"The interpretation of federal tax provisions is ordinarily persuasive of the proper interpretation of Oregon provisions copied from them. This is so because it can be assumed with some assurance that ordinarily the legislature, in borrowing federal provisions, intends economic transactions to have similar tax consequences under both federal and state law. * * *" 535 P2d at 92.

ing of section 501(c)(3) of the Internal Revenue Code of 1954." 1958-1 Cum Bull at 241-242.

In finding the corporation exempt, the Internal Revenue Service specifically revoked a contrary holding by the Service in 1932 as to a student bookstore.

In *Eman. Luth. Char. Bd. v. Dept. of Rev.*, 263 Or 287, 291, 502 P2d 251 (1972), we said:

"This court is committed to the rule that tax exemption statutes are to be construed strictly but reasonably. The evolution of this rule is described in *Multnomah School of the Bible v. Multnomah County*, 218 Or 19, 343 P2d 893 (1959), and need not be repeated here. It has been followed in our later cases, although not all of them have used the phrase 'strict but reasonable.' *Unander v. U. S. Nat'l Bank*, 224 Or 144, 150-151, 355 P2d 729 (1960); *Methodist Homes, Inc. v. Tax Comm.*, 226 Or 298, 360 P2d 293 (1961); *Willamette Univ. v. Tax Comm.*, supra; *Reter v. State Tax Comm.*, 256 Or 294, 473 P2d 129 (1970). Strict but reasonable means merely that the statute will be construed reasonably to ascertain the legislative intent, but in case of doubt will be construed against the taxpayer." 263 Or at 291.

Illinois has a statute similar to the Oregon statute. The Illinois Supreme Court considered a case wherein a nonprofit corporation sought exemption from property taxes under a statute granting exemption for all property used for public school, college, seminary, university or other public educational purposes. *Association of American Medical Colleges v. Lorenz*, 17 Ill2d 125, 160 NE2d 763, 764-765 (1959). The plaintiff association was organized "to improve medical education in the United States." It was not a school and it offered no classroom instruction; it published a journal, compiled information, maintained a film library, and provided a multitude of other services to

students and medical schools throughout the nation. The court granted the association a tax exemption under the Illinois statute.

> "* * * That there is a real and substantial connection between the uses of this property and the intent of exemption provisions seems apparent. We think the argument that would confine exemption to property used as classrooms fails to recognize the statutory purpose. * * *

> "* * * Where the functions themselves qualify for exemption it does not matter that they are performed by a separate organization rather than by the respective member institutions. * * *" 160 NE2d at 765-766.

New York also has a statute similar to our statute and the federal tax code, requiring that a corporation be organized exclusively for educational purposes to be tax exempt. *Faculty-Student Ass'n of State Univ. v. Sharkey*, 35 AD2d 161, 316 NYS2d 698 (1970). The New York Appellate Division was asked to hold a similar nonprofit corporation tax exempt. The corporation, among other things, provided a laundry and linen service for the dormitories, transportation for intercollegiate sports, and operated a bookstore and food service. The court held that the literal language of the statute would not be adhered to at the expense of the purpose and policy the statute intended to promote. The court held that the corporation in question was tax exempt.

This court has interpreted the statutory phrase "exclusively" to mean primary use. *Multnomah School of Bible v. Mult. Co.*, 218 Or 19, 29, 343 P2d 893 (1959). The University of Oregon Co-Op is organized and operated primarily for the educational purpose of providing textbooks, reference books and school supplies for the students and faculty of the University. As in the federal Revenue Ruling, supra, 1958-1 Cum

Bull at 242: "* * * it is for all intents and purposes an integral part of the university."

Both *Multnomah School of Bible v. Mult. Co.*, supra, and *Bd. Pub. Meth. Church v. Tax Com.*, 239 Or 65, 396 P2d 212 (1964) are distinguishable. The main question in *Multnomah School of Bible* was whether a residence building on the campus, the lower story of which was occupied by the school's superintendent of buildings and his wife, and the upper story of which was occupied by the school's dining hall supervisor, was exempt from ad valorem taxes under ORS 307.-130(1). The court held that the building was exempt.

The second question in *Multnomah School of Bible* was whether real property owned by the school and located in downtown Portland and used for the operation of a bookstore was exempt from ad valorem taxes under ORS 307.130(1), which exempts property which is "actually and exclusively occupied or used in the literary, benevolent, charitable or scientific work carried on by such institutions." The school tacitly conceded that the bookstore known as the Christian Supply Center was a commercial venture, but claimed the real property was exempt because the profits derived from its operation were used to support and carry on the school. This court held that the property was not exempt. There was no claim by the Multnomah School of Bible that the revenues derived from the Christian Supply Center were exempt from the corporate excise tax, ORS 317.080(4), and that question was not considered by the court.

In *Bd. Pub. Meth. Church v. Tax Com.*, supra, the plaintiff also operated a bookstore in downtown Portland which this court said was "not unlike any other commercial bookstore in appearance or in the goods offered for sale", and held that "the competitive, commercial nature of its business precludes exemption to plaintiff". 239 Or at 67, 69.

As in *Multnomah School of Bible,* it was tacitly admitted that the proceeds of the bookstore were not per se exempt under ORS 317.080(4). The plaintiff contended, however, that Oregon had adopted "what has become known as the 'destination of income' theory for determining the right to exemption." 239 Or at 69-70. This court rejected the "destination of income" theory and held that taxable proceeds of a commercial enterprise could not be laundered by channeling the proceeds to a corporation exempt under ORS 317.080(4).

The distinguishing feature is that in both of our previous cases the bookstores were operated not as integral parts of the parent corporations, but as subsidiaries operated for profit, which profit was channeled into the treasury of the exempt parent corporation. In our case the Co-Op was not operated for profit, but as an integral part of the University to further its "educational purposes." If the Co-Op ceased to operate, the University would have to furnish the facilities and perform the functions which are now performed by the Co-Op as a necessary adjunct of the educational purposes of the University.

Both the Department of Revenue and the Tax Court based their holdings on a regulation adopted by the Department of Revenue pursuant to ORS 314.-815.[7] The regulation, OAR 150-317.080(4) reads as follows:

"A corporation organized exclusively (i.e., primarily) for educational purposes is one which offers a regular course of instruction in an institution established for that purpose * * *; or, under exceptional circumstances, an organization whose sole purpose is to instruct the public, or

---

[7] "The department may, from time to time, make such rules and regulations, not inconsistent with legislative enactments, that it considers necessary to enforce income tax laws."

an association whose primary purpose is to present lectures or artistic performances * * *."

It will be noted that the regulation limits the exemption to corporations which offer "a regular course of instruction in an institution established for that purpose". We think the regulation is an attempt to drastically limit the scope of the exemption "for educational purposes" provided by ORS 317.080(4). As this court said in *McCarthy v. Coos Timber Co.,* 208 Or 371, 390, 302 P2d 238 (1956):

"* * * Rules must be appropriate, reasonable, within the limitations of the law for the enforcement of which they are provided. They must be consistent with the law and of such a nature as to tend to its enforcement. (Citations omitted.)"

See, also, *General Engineering, Inc. v. N.L.R.B.,* 341 F2d 367, 374 (9th Cir 1965).

■ This court has consistently held that an administrative agency may not, by its rules, amend, alter, enlarge or limit the terms of a legislative enactment. In *Gouge v. David et al,* 185 Or 437, 459, 202 P2d 489 (1949), we said:

"* * * A statute which creates an administrative agency and invests it with its powers restricts it to the powers granted. The agency has no powers except those mentioned in the statute. It is the statute, not the agency, which directs what shall be done. The statute is not a mere outline of policy which the agency is at liberty to disregard or put into effect according to its own ideas of the public welfare. * * *"

■■ ORS 314.815 gives the Department of Revenue authority to make regulations as necessary to enforce the income tax laws, but by its own terms limits such regulations to those "not inconsistent with legislative enactments." We think regulation 150-317.080(4) is obviously inconsistent with ORS 317.080(4). As said

by the Oregon Tax Court in *Ore.-Wash. Plywood v. Commission,* 2 OTR 108, 110:

"ORS 314.815 allows the State Tax Commission to make regulations 'not inconsistent with legislative enactments.' The regulation in this case, 7.260, is completely inconsistent with the statute. The statute allows a deduction of the interest paid in this case and the regulation denies it. The regulation does much more than add meaning to the 'bare bones' of the statute. *U. S. Nat'l Bank v. Tax Commission,* 233 Or 478, 484, 378 P2d 989 (1963). The plaintiff is entitled to deduct the interest paid."

See, also, *Bailey v. Commission,* 2 OTR 399, 407.

The Department of Revenue cannot rewrite the law, it can only fill in the interstices in the legislation to aid in the accomplishment of the statute's purposes. *Van Ripper v. Liquor Cont. Com.,* 228 Or 581, 591, 365 P2d 109 (1961). The exemption given by ORS 317.-080(4) cannot be eliminated in effect by an administrative regulation. The Department of Revenue has exceeded its authority in adopting and applying this regulation.

■ To qualify for tax exemption under ORS 317.-080(4), the Co-Op must also satisfy the requirement that no part of its net earnings inure to the benefit of any private stockholder or individual. This is also a requirement for federal tax exemption under Int. Rev. Code § 501(c)(3) and there is a federal Revenue Ruling directly in point. In Rev. Rul. 69-538, 1969-2 Cum Bull 116, a book and supply store sold new and used textbooks and school supplies to its membership, limited to students and faculty of the college. Earnings in excess of operating needs were refunded annually to members in proportion to their purchases, a rebate system identical to the University of Oregon Co-Op's. The Internal Revenue Service held at 117:

"Since the cash refund is based upon the amount

of business transacted with each member, it merely represents a reduction in the price of the books and supplies sold. Therefore, the annual distribution to members does not result in inurement of the organization's net earnings to individuals."

Similarly, this court has held that refunds which result in a price reduction to members are not "profits" within the ordinary meaning of the word. *Ore. Physicians' Serv. v. State Tax Com.,* supra, 220 Or at 506.

We hold that the University of Oregon Co-Operative Store is exempt from corporate excise taxes for the year 1970 and a refund for taxes paid in tax years 1967, 1968, and 1969.

The decree of the Tax Court is reversed.