Argued and submitted September 17, 1979,
affirmed January 21, 1980

# SHILOH YOUTH REVIVAL CENTER, INC.,
*Petitioner,*

*v.*

# EMPLOYMENT DIVISION, et al,
*Respondents.*

## (Nos. 78-T-75, 78-T-6, CA 14235)

605 P2d 704

Norman J. LeCompte, Jr., Eugene, argued the cause for petitioner. With him on the brief was Hershner, Hunter, Miller, Moulton & Andrews, Eugene.

W. Benny Won, Assistant Attorney General, Salem, argued the cause for respondents. With him on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Tanzer, Presiding Judge, and Thornton and Campbell, Judges.

THORNTON, J.

**THORNTON, J.**

Petitioner Shiloh Youth Revival Center (Shiloh) appeals from an order holding it subject to unemployment compensation tax and assigns as error the following:

1)  The referee's holding that certain of Shiloh's work activities were "services in furtherance of a trade or business for profit" within the meaning of OAR 471-31-090(2)(a);

2)  Failure to hold that the Employment Division (division) was barred by ORS 657.676 from redetermining Shiloh's subjectivity to unemployment taxation; and

3)  Failure to hold that the division was equitably estopped from retroactively assessing unemployment payroll taxes and interest on wages paid during the four years prior to assessment.[1]

The essential facts are not in dispute:

Shiloh is a nonprofit religious organization that operates a number of communal centers where its unmarried members live, attend class and work together. It holds regular worship services open to the public and provides food and lodging for transients, some of whom become members. As an adjunct to its religious training, Shiloh operates several work programs at issue here: a laundromat, grocery store, janitorial service, Shiloh Industries (remodeling services) and Shiloh Forestry (reforestation, spraying).

With the exception of Shiloh Forestry, none of these activities produced profits. Shiloh Forestry began producing profits in 1976 but was sold in 1978 (at a profit) when Shiloh determined that the program was no longer fulfilling its intended purpose.[2] That purpose

---

[1] A portion of the taxes assessed was outside the four year limitation imposed on back tax liability by ORS 657.552(1) and was excluded by the referee. They are not at issue here.

[2] At the time Shiloh Forestry was sold, Shiloh was having to staff half its work crews with non-members.

[83]

was to instill in its adherents a work ethic as part of a total Christian environment. Projects conducive to group effort were selected; classes were held at lunch and individual counseling occurred during the day. All revenues from the operations went to Shiloh and represented the bulk of its operating capital. Center members received room and board and "stipends" to cover their personal needs. These stipends were geared to need, not job performance.

In 1975, Shiloh requested information regarding the divisions's regulations and received a response stating in part:

"Insofar as exemptions are concerned for nonprofit organizations, I refer you to ORS 656.072. Employing units which meet the criteria under [657].072 of the exemption are not taxable. All other nonprofit organizations are subject to the tax at this time."

Shortly after this response, the division audited Shiloh by orally examining its officers and obtained information regarding all its operations. No records were examined, however, and no formal determination was ever made. Shiloh received no word of the results of the audit. As a result of these two contacts with the division and the ensuing silence, Shiloh concluded it was exempt and failed to file as a subject employer. It made no further inquiries of the division.

On September 5, 1978, the division made a formal determination that certain of Shiloh's activities subjected it to unemployment tax liability[3] and a notice of assessment was issued on September 14, 1978. Shiloh contested the assessment and a hearing was held. ORS 657.683. The referee found that Shiloh was a church within the meaning of ORS 657.072(1) and accompanying regulations.[4] He held nevertheless that the

---

[3] This action was prompted by several claims for unemployment benefits filed by former Shiloh members.

[4] ORS 657.072 provides in part:

" 'Employment' does not include service performed:

work activities at issue were "trades or businesses for profit" (OAR 471-31-090(2)) and were not exempt from taxation merely because they were performed under the auspices of a nonprofit organization. No constitutional questions were raised nor was the validity of the regulation questioned.

The scope of our review is that of a contested case under ORS 183.480 to 183.482. ORS 657.684. We must affirm the referee unless the order is not in accordance with the law or is unsupported by substantial evidence on the whole record. ORS 183.482(8). Unlike cases involving income or property taxation, the unemployment tax is designed to effectuate a purpose beyond mere revenue raising, that is, to extend unemployment coverage to as many workers as possible. In accordance with this legislative purpose, all exemptions must be narrowly construed. *Vic Coburn Evangel. Assoc. v. Emp. Div.,* 35 Or App 655, 657, 582 P2d 51, *rev den* 284 Or 1 (1978).

Shiloh concedes that the operations involved here are trades or businesses but contends that they are nevertheless exempt from taxation because they were

---

"(a) In the employ of:

"(A) A church or convention or association of churches;

"(B) An organization which is operated primarily for religious purposes and which is operated, supervised, controlled or principally supported by a church or convention or association of churches."

OAR 471-31-090 provides in part:

"(1) As used in ORS 657.072 and this section, unless the context clearly indicates otherwise:

"(a) The word 'church' means a particular religious group organized as a congregation and conducting regular public worship services.

" * * * * *

"(2) Nothing in ORS 657.072 and this section shall be construed as exempting from employment:

"(a) Services performed for a church, convention, or association of churches when such services are in furtherance of a trade or business for profit for such organization."

not operated for profit. In the alternative, it contends that the work was services performed in the employ of an organization operated primarily for religious purposes. ORS 657.072(1)(a)(B). These contentions boil down to a single argument that, although the work was of a type normally carried on for profit and did, in one instance, produce profit, that profit was incidental to the religious purpose. In support of its argument, Shiloh points to the instruction that occurred during work hours, the manner in which compensation was handled, the fact that profitable work was occasionally turned down and, in the case of Shiloh Forestry, that the operation was sold when it ceased to fulfill its intended religious purpose.

It is settled in other tax contexts that an exempt organization cannot run a business for profit and avoid taxation by passing the profits through the organization. *Corp. of Presiding Bishop v. Dept. of Rev.,* 276 Or 775, 778, 556 P2d 685 (1976). Our Supreme Court has twice held bookstores operated commercially by church organizations to be subject to property taxation although the profits went to a tax-exempt organization. *Mult. School of Bible v. Mult. Co.,* 218 Or 19, 343 P2d 893 (1959); *Bd. Pub., Meth. Church v. Tax Com.,* 239 Or 65, 396 P2d 212 (1964). In *U. of O. Co-Oper. v. Dept. of Rev.,* 273 Or 539, 542 P2d 900 (1975), the University-run bookstore which did 99 percent of its business filling students' needs, was held to be exempt from corporate excise taxes. The court distinguished the earlier bookstore cases and stated:

> "The distinguishing feature is that in both of our previous cases the bookstores were operated not as integral parts of the parent corporations, but as subsidiaries operated for profit, which profit was channeled into the treasury of the exempt parent corporation. *In our case the Co-Op was not operated for profit, but as an integral part of the University to further its 'educational purposes.' If the Co-Op ceased to operate, the University would have to furnish the facilities and perform the functions which are now performed by the Co-Op as a necessary adjunct of the*

*educational purposes of the University."* 273 Or at 549. (Emphasis supplied.)

While these cases are not controlling, we believe that the test set forth accurately reflects the Employment Division policy as reflected in OAR 471-31-090. *See* footnote 4. The work was of a type normally engaged in for profit. The referee found that the operations were intended to and did, in one case, make a profit, and there is evidence to support that finding. Most importantly, there is nothing inherent in the nature of any of the work activities at issue that is integral to the achievement of Shiloh's religious purpose or essential to its day-to-day operations. The work ethic, as formulated in Shiloh's religious philosophy, is readily adaptable to a wide range of group work activities, both profit-making and volunteer. That religious instruction occurred on the job or that operations were managed in a manner different from most businesses are insufficient to supply the nexus between the nature of the work activity and the religious purpose required for exemption.

Shiloh next contends that ORS 657.676 bars the division from reconsidering Shiloh's status because of the division's prior investigation, inaction and acquiescence in petitioner's tax-exempt status.[5] ORS 657.676 permits reconsideration of a prior determination of liability only to review clerical and computational errors or to evaluate facts unknown to the division when it made its initial determination.

"Determination," as used in ORS ch 657, is a term of art and refers to a specific type of division action

---

[5] ORS 657.676(1) provides:

"Upon his own motion or upon application of an interested employer, the assistant director may reconsider a determination of employer subjectivity, tax rate or tax assessment irrespective of whether it has become final. Such reconsideration shall be restricted to determinations resulting from clerical errors or errors of computation and may include a new decision upon any grounds or issues not previously ruled upon or new facts not previously known to the assistant director."

[87]

which includes official notice and the right to a hearing. ORS 657.679. No such official action was taken here. The division's response to Shiloh's inquiry referring Shiloh to the statute governing exemptions is not a determination. ORS 657.676 does not bar the present determination.

Finally, Shiloh argues that division is estopped by its conduct from retroactively assessing taxes and interest. Shiloh claims prejudice results from the interest payments and the lack of opportunity to develop an experience rating leading to a lower tax rate (ORS 657.430) or to elect direct reimbursement of the Unemployment Compensation Fund for benefits paid. ORS 657.505(8).

In *Donahoe v. Eugene Planing Mill,* 252 Or 543, 545, 450 P2d 762 (1969), the court stated:

" ' "To constitute an equitable estoppel, or estoppel by conduct, (1) there must be a false representation; (2) it must be made with knowledge of the facts; (3) the other party must have been ignorant of the truth; (4) it must have been made with the intention that it should be acted upon by the other party; and (5) the other party must have been induced to act upon it. * * *" ' *Earls et ux v. Clarke et al,* 1960, 223 Or 527, 530-531, 355 P2d 213."

The doctrine is rarely applied to taxing authorities. *Johnson v. Tax Commission,* 248 Or 460, 462, 435 P2d 302 (1967).

" * * * It could only be applied when there is proof positive that the collector has misinformed the individual taxpayer and the taxpayer has a particularly valid reason for relying on the misinformation and that it would be inequitable to a high degree to compel the taxpayer to conform to the true requirement. * * *" 248 Or at 463-64.

While the division's conduct and its response to Shiloh's inquiry might have misled Shiloh, there was nothing that actually *misinformed* Shiloh. Prior to 1978, the division took no official position with respect

[88]

to Shiloh's status, and Shiloh never requested an official determination. In cases such as this, where an employer in good faith considers itself exempt, ORS 657.552(1) limits the employer's liability for back taxes to four years prior to the notice of assessment. When Shiloh began engaging in work for profit, it subjected itself to unemployment tax liability and the division is not estopped to collect those taxes.

The statutory basis for assessing interest on unpaid unemployment tax contributions is ORS 657.515(2), which provides, in relevant part:

> "Interest paid upon the amount due from an employer shall be paid and shall be collected, at the same time payment of taxes is required to be made by such employer to the [fund] at the rate of one percent per month from the date prescribed for the payment to the [fund]. * * *"

The question is whether an amount is "due" from a generally exempt employer at the time the subject employment occurs or only when the division affirmatively declares that certain employment is subject to taxation.

In general, an employer is required to pay tax whenever it falls within the definitional requirements of ORS 657.015 to 657.030, unless its activities are specifically exempt. ORS 657.505(1).[6] Even where an organization is generally exempt, some of its activities may be subject to tax if they do not relate sufficiently to the exempt purpose. OAR 471-31-090(2). This framework, together with the policy favoring coverage, compels the conclusion that, absent a declaration that certain employment is exempt,[7] an employer

---

[6]

"On and after January 1, 1936, taxes shall be payable by each employer then subject to this chapter. Taxes shall become payable by any other employer on and after the date on which he becomes subject to this chapter." ORS 657.505(1).

[7] We need not consider, and therefore do not decide, what the application of the statute would be had the division issued a determination of exemption following its 1975 audit of Shiloh.

which fails to pay unemployment tax contributions when the subject employment occurs does so at its peril. It follows from ORS 657.515(2) that interest begins to run on amounts that become due in this manner "at the rate of one percent per month from the date prescribed for the payment" of that amount. The "date prescribed" for payment is the last day of the month following the calendar quarter in which the subject employment occurs. OAR 471-31-070(1).

Affirmed.