Argued and submitted December 7, 1989, resubmitted In Banc July 12, 1990, rule held valid October 16, reconsideration denied December 11, 1991, petition for review denied January 21, 1992 (312 Or 588)

CALIFORNIA TABLE GRAPE COMMISSION,
and Jack McFadden and Jackie Selgregg
dba Brice's,
*Petitioners,*

*v.*

HEALTH DIVISION,
*Respondent.*

(CA A51216)

818 P2d 985

J. Michael Alexander, Salem, argued the cause for petitioners. With him on the brief was Burt, Swanson, Lathen, Alexander & McCann, Salem.

John T. Bagg, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, Virginia L. Linder, Solicitor General, Salem, and Leonard Pearlman, Assistant Attorney General, Portland.

ROSSMAN, J.

Warren, J., dissenting.

## ROSSMAN, J.

In this proceeding under ORS 183.400, petitioners challenge the validity of a rule by which the Health Division of the Department of Human Resources (Division) regulates the sale of sulfite treated foods in restaurants.[1] We hold the rule valid.

OAR 333-151-010(4) prohibits restaurants and certain other establishments from serving fresh fruits and vegetables to which sulfites have been added before delivery to the restaurant:

"Sulfur dioxide, sodium sulfite, sodium bisulfite, potassium, potassium bisulfite, sodium metabisulfite and potassium metabisulfite shall not be used in solution to dip, soak, spray or rinse fresh foods or foods to be consumed without cooking nor may these chemicals be added to or mixed singly or in combination to any food product in any establishment subject to OAR 333-150-000 through 333-168-020. Preservative products or additives containing one or more of these compounds may not be kept or stored in any establishment subject to these rules. *Fresh vegetables, fresh salad items and fresh fruits to which these chemicals have been added during preparation or handling before delivery to an establishment, shall not be served.*" (Emphasis supplied.)

Growers and distributors in the grape industry treat table grapes with the fungicide sulfur dioxide, a sulfite, before the grapes are shipped.

Petitioners contend that Division exceeded its statutory authority by prohibiting the serving of grapes that have had sulfur dioxide added to them before they arrive at the restaurant. They argue that the relevant statutes only authorize Division to prohibit a restaurant's use of sulfites as a food additive, not a restaurant's use of food to which growers or distributors have added sulfites.

---

[1] Petitioners are also parties to appellate review of a circuit court case which challenges OAR 333-151-010(4) under ORS 183.484: *Calif. Table Grape Comm'n v. Dept. of Human Res.*, 109 Or App 222, 818 P2d 985 (1991). This proceeding was held in abeyance pending determination of the jurisdictional question in *Calif. Table Grape Comm'n v. Dept. of Human Res.*, supra.

We disagree. ORS 616.073 expresses the policy of the state of Oregon about sulfite use:

"(1) The Legislative Assembly finds that sulfites used as an additive in fresh foods and foods to be consumed without cooking may have already caused the death of one Oregonian and may pose a threat to the health of thousands of Oregonians.

"(2) The Legislative Assembly further finds that the presence of sulfites in fresh foods and foods to be consumed without cooking is not readily detectable by consumers of the food.

"(3) It is therefore the policy of the State of Oregon to protect its citizens from the adverse effects of sulfites by:

"(a) Prohibiting the use of sulfites in fresh foods and foods to be consumed without cooking by any restaurant licensed under ORS 624.010 to [ORS] 624.120 and [ORS] 624.310 to [ORS] 624.440; and

"(b) Encouraging the use of an alternative to sulfites in food processing."

ORS 616.073(1) refers to a death that might have been caused by sulfites used as an additive. The statute as a whole, however, expresses an intent to protect restaurant patrons from ingesting sulfite-treated foods, whatever the source of the sulfites. Obviously, that goal could only be accomplished if restaurants refrain from serving foods that have been treated with sulfites by growers and distributors, as well as those that have been treated by the restaurants themselves. Recognizing that fact, the legislature directed Division to adopt rules necessary "to implement the policy of the State of Oregon *to prohibit the use of sulfites in fresh foods and foods to be consumed without cooking*[.]" ORS 616.077(2). (Emphasis supplied.) Therefore, the statutes prohibit the sale of all sulfite-treated foods in restaurants, regardless of whether the substance was added by the restaurant or by the growers or distributors.

Relying on a restrictive interpretation of the term "use," petitioners contend that the phrase "the use of sulfites * * * by any restaurant," as employed in ORS 616.073, means only a restaurant's application of sulfites as a food additive. Division responds that a broader interpretation of the term "use" is required, making the prohibition applicable to food

to which food growers or distibutors have added sulfites. Given the ambiguity in the statute, it is appropriate to consider legislative history. *See Lipscomb v. State Bd. of Higher Ed.*, 305 Or 472, 484-85, 753 P2d 939 (1988).

Before adoption of ORS 616.073, Division promulgated temporary rule OAR 333-32-027(1):

"Unless the [restaurant provides notice of sulfite use and hazards], sulfur dioxide [and other sulfating agents] shall not be used in solution to dip, soak, spray or rinse food products nor may these chemicals be added to or mixed singly or in combination to any food product in any establishment subject to OAR 333-32-001 through 333-32-272. * * * *Fresh vegetables, fresh salad items and fresh fruits to which these items have been added during processing or handling before delivery to an establishment shall not be served.*" (Emphasis supplied.)

In 1985, the legislature enacted ORS 616.073 to ban all use of sulfites in restaurants. Representative Schoon explained the bill before the Senate Committee on Business, Housing and Finance:

"The Health Department has devised rules that are almost identical to the ones we've put into the Bill, so the statutory language is not really going to do anything more than the Health Department is doing right now — It only applies to fresh produce that is utilized in the state — The question could be asked, I suppose: Why do we need statutory language if we have a rule that deals with this and I think that it's a case where one of our departments acted properly before we had statutory language dealing with something that is very, very dangerous. And so, we felt strongly enough about this — We felt it was a health issue, a consumer protection issue, that we felt that we ought to go ahead and put it in the statutes.

"Chairman: John, did he — In talking around with some people in the Senate a long time ago, I recall discussions about their actually spraying sulfites on large railroad cars with lettuce, etc. Does this apply — Do these rules apply to that kind of activity? Are we talking — Are you really — Is it just the restaurants or does it go beyond?

"Rep. Schoon: *No, it goes beyond that. It also goes to the distributors. They are prohibited from distributing in Oregon produce — fresh produce, again, only that has been sulfite treated.*" Senate Committee on Business, Housing

and Finance, Minutes, June 13, 1985, p 2. (Emphasis supplied.)

It is clear that the legislature intended by ORS 616.073 and ORS 616.077 to prohibit the sale of all sulfite treated foods, regardless of when, where or by whom the food was treated with the chemical. OAR 333-151-010(4) gives effect to that intent. It is, therefore, within the legislative grant of authority.

OAR 333-151-010(4) held valid.[2]

**WARREN, J.,** dissenting.

I would hold that there is no statutory authority for the part of OAR 333-151-010(4) that prohibits restaurants and certain other establishments from serving fresh fruits and vegetables to which sulfites have been added before delivery to the restaurant. Accordingly, I dissent.

The scope of regulation by a state agency may not be broader than the terms of the statute that authorizes the agency to act. *U. of O. Co-Oper. v. Dept. of Rev.,* 273 Or 539, 550, 542 P2d 900 (1975). In determining the meaning of a statute, we must first decide if it is free from ambiguity. *Murphy v. Nilsen,* 19 Or App 292, 527 P2d 736 (1974). If it is, no resort to rules of construction is required or permitted. We must also construe all related provisions consistently. ORS 174.010.

ORS 616.073 provides, in part:

"(3)   It is therefore the policy of the State of Oregon to protect its citizens from the adverse effects of sulfites by:

"(a)   Prohibiting the use of sulfites in fresh foods and foods to be consumed without cooking by any restaurant licensed under ORS 624.010 to 624.120 and 624.310 to 624.440; and

"(b)   Encouraging the use of an alternative to sulfites in food processing."

ORS 616.073(3)(a) expressly prohibits "the use of sulfites * * * by any restaurant * * *." A dictionary defines the noun "use" as "the act or practice of employing something." *Webster's Ninth New Collegiate Dictionary* 1299

---

[2] Petitioner's other arguments do not require discussion.

(1988). ORS 616.073(3)(a) clearly prohibits the use of sulfites by restaurants. The serving of food previously treated with sulfites by food processors or shippers is not the use of sulfites.

Food processors receive separate treatment in ORS 616.073(3)(b). Rather than prohibiting sulfite use by food processors, the legislature "encourages" them to use alternatives to sulfites. The majority's reading of the statute renders that subparagraph meaningless.

In order for the prohibition of the "use of sulfites * * * by any restaurant" to apply to food to which food processors previously had added sulfites, it is necessary to read the word "use" in section (3)(a) very broadly. That interpretation not only stretches the plain meaning of the word "use," but strains the scope of the entire scheme. It limits the scope of section 3(b), which encourages food processors to use alternatives to sulfites. Under that interpretation, food processors would be encouraged to use alternatives when processing food sold to non-restaurants and would effectively be prohibited from using sulfites in food sold to restaurants. The legislature could easily have written the statute to make that distinction, but it did not.[1]

---

[1] Even if the prohibition in ORS 616.073(3)(a) were to apply to food processors, it would not apply to the grape industry's use of the fungicide sulfur dioxide. ORS 616.073(1) focuses the legislature's concern on sulfites used as an "additive." The fungicide sulfur dioxide is not a food additive, as defined in the Oregon statutes, because pesticides and fungicides are excluded from the definition of "food additive." ORS 616.205(8) defines the term "food additive":

" 'Food additive' means any substance the intended use of which results or may reasonably be expected to result, directly or indirectly, in its becoming a component or otherwise affecting the characteristics of any food, including any substance intended for use in producing, manufacturing, packing, processing, preparing, treating, packaging, transporting, or holding food, and including any source of radiation intended for any such use, if such substance is not generally recognized, among experts qualified by scientific training and experience to evaluate its safety, as having been adequately shown through scientific procedures or experience based on common use in food to be safe under the conditions of its intended use. *'Food additive' does not include*:

"(a) *A pesticide chemical in or on a raw agricultural commodity*;

"(b) *A pesticide chemical to the extent that it is intended for use, or is used in the production, storage or transportation of any raw agricultural commodity*; or

"(c) A color additive." (Emphasis supplied.)

Chapter 616 does not define "pesticide," but as used in chapter 634, it includes "fungicide." ORS 634.006(8)(c). ORS 634.042 cross-refers to ORS 616.234(1) in its

More importantly, the majority's interpretation contradicts ORS 616.077(2). Although ORS 616.077(1)[2] directs the Division to adopt rules necessary to implement the policy established in ORS 616.073, ORS 616.077(2) specifically and clearly exempts licensed food processors from the prohibition against sulfite use adopted in ORS 616.073:

> "Rules adopted by the Health Division under subsection (1) of this section to implement the policy of the State of Oregon to prohibit the use of sulfites in fresh foods and foods to be consumed without cooking shall not apply to a food processing establishment licensed under ORS 616.695 to 616.755."[3]

The only specific prohibition against sulfite use in ORS 616.073 is in section (3)(a), dealing with restaurants. Exempting licensed food processors from the prohibition allows them to sell fresh produce treated with sulfites to restaurants and is consistent with the plain meaning of ORS 616.073(3)(a), which limits the sulfite prohibition to sulfites added by restaurants.

Division argues that the statutes are ambiguous, because the exemption in ORS 616.077(2) is unnecessary, if

---

discussion of the use of pesticides on raw agricultural commodities. The term "pesticide," as used in chapter 616, also includes "fungicide."

We presume that the legislature is familiar with the statutory definitions of the terms that it uses and that it intentionally excluded from sulfite legislation sulfites that are not additives.

[2] ORS 616.077(1) provides:

"The Health Division shall adopt any rules necessary to implement the policy established in ORS 616.073. In developing such rules, the Health Division shall consult with food service advisory committees appointed pursuant to ORS 624.550."

[3] ORS 616.695 to ORS 616.755 is entitled "Sanitary Regulations for Food and Food Establishments." "Food establishment" is:

"(a) Any room, building, structure or place, used or intended for use, or operated for storing, preparing, compounding, manufacturing, processing, freezing, packaging, distributing, handling, salvaging or displaying food.

"(b) The ground upon which such place or business is operated or used and so much ground adjacent thereto as is also used in carrying on the business of the establishment. The department may prescribe such additional area or places which, although they may not be contiguous or adjacent to the above area or establishment, may be included therein.

"(c) Vehicles, machinery, equipment, utensils, tools, fixtures, implements, and all other articles or items, used in operating or carrying on the business of a food establishment." ORS 616.695(2).

food processors already are exempt from the prohibition by ORS 616.073. Although the exemption in ORS 616.077(2) may be redundant, it is consistent with ORS 616.073 and merely emphasizes that the prohibition applies only to a restaurant's application of sulfites.

Petitioners also point out that limiting the prohibition to restaurants is consistent with the legislature's division of responsibility for the enforcement of food laws between Division and the Department of Agriculture (Department). Division regulates the sanitation of establishments where food is sold, while Department regulates food processors, unless the statutes explicitly provide otherwise. ORS 616.010.[4] Division's authority for enforcing the sulfite prohibition under ORS 616.077 is consistent with a prohibition limited to application by restaurants, because Division only has authority to regulate restaurants; *it does not have authority to regulate food processors.*

Because I would hold that OAR 333-151-010(4) is invalid insofar as it prohibits the serving of fruits and vegetables to which sulfites have been added before delivery to the establishment, I respectfully dissent.

Buttler and Edmonds, JJ., join in this dissent.

---

[4] ORS 616.010 provides:

"The duty of administration and enforcement of all regulatory legislation applying to:

"(1) The production, processing and distribution of all food products or commodities of agricultural origin shall, in addition to such further legislation as shall specifically name the department as the administering agency, be performed by the department to the exclusion of any other department not so specifically named.

"(2) The sanitation of establishments where food or drink is consumed on the premises where sold, or to sanitary practices used in such establishments, shall be performed by the Health Division."

The authority of Division to regulate restaurants is further defined in ORS 624.100. In chapter 616, "the department" refers to the Department of Agriculture. ORS 616.005. ORS 616.015 mandates full cooperation between Division and Department in order to promote efficiency and avoid duplication.