Argued and submitted March 24, rule upheld in part, invalidated in part May 12, reconsideration denied June 18, petition for review denied July 2, 1980 (289 Or 337)

# JOINT COUNCIL OF TEAMSTERS NO. 37, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSE-MEN AND HELPERS OF AMERICA,
## *Petitioner,*
### *v.*
# OREGON LIQUOR CONTROL COMMISSION,
## *Respondent.*

### (No. 845, CA 15777)

610 P2d 1250

Darrell L. Cornelius, Portland, argued the cause for petitioner. With him on the brief was Carney, Probst & Cornelius, Portland.

Al J. Laue, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General and Walter L. Barrie, Solicitor General, Salem.

Before Joseph, Presiding Judge, and Warden and Warren, Judges.

WARDEN, J.

JOSEPH, J., Dissenting opinion.

**WARDEN, J.**

This is a petition for review of OAR 845-10-207 adopted by the Oregon Liquor Control Commission (OLCC) brought pursuant to ORS 183.400.

In late 1978, the OLCC held a public hearing to consider adoption of an administrative rule to define "pasteurize" as that term is found in ORS 471.260[1] and 471.265.[2] The rule would define the term so as to allow treatment of malt beverages by any means which would produce a beverage with microbiological quality comparable to those treated by traditional heat methods. The Commission later voted not to adopt the rule, however, but to refer the question to the legislature. It proposed a bill during the 1979 legislative session amending the Liquor Control Act to include the desired definition. The House Legislative Oversight Committee voted not to introduce such a bill, however. Thereafter, in September, 1979, the OLCC adopted the rule in question:

> "845-10-207 *Pasteurization of malt beverages.* (1) 'Pasteurized malt beverages' means malt beverages which have been subjected to such process or processes in manufacture and packaging which effectively inhibit continuing microbiological activity by the inactivation, destruction, or removal of organisms capable of such growth, activity or decomposition.

---

[1] ORS 471.260 provides in pertinent part:

"(2) A package store license shall allow the sale of pasteurized malt beverages containing not more than eight percent of alcohol by weight and wine containing not more than 21 percent of alcohol by volume." (Amended by 1973)

[2] ORS 471.265 provides in pertinent part:

"(2) A retail malt beverage license shall permit the licensee to sell (a) draft or pasteurized malt beverages for consumption on the licensed premises, (b) pasteurized malt beverages in brewery-sealed packages for consumption off the licensed premises, (c) unpasteurized malt beverages in brewery-sealed packages containing not less than one gallon each for consumption off the licensed premises and (d) wine for consumption on the licensed premises and wine in winery-sealed packages for consumption off the licensed premises."

"(2) The following methods for pasteurization of malt beverages are acceptable:

"(a) Heating the malt beverage after bottling or canning;

"(b) Heating the malt beverage, then bottling or canning under aseptic conditions, or

"(c) Removing microorganisms by filtration, then bottling or canning under aseptic conditions.

"(3) Pasteurization is acceptable by any method which produces a malt beverage with microbiological quality comparable to malt beverages treated by heating after bottling or canning for at least five minutes at 60°C (140°F) or by heating the malt beverage for 20 seconds at 73.3°C (164°F) before bottling or canning under aseptic conditions, and which is safe for human consumption."

Petitioners argue that pasteurization is a process whereby food or liquid is heated, which treatment kills microorganisms present in a food or liquid. They contend that in defining the term to include nonheat methods of purification, the OLCC has acted beyond the scope of its authority granted it in ORS 471.730 and has violated art. IV § 1 of the state constitution[3] by exercising power reserved to the legislature.

The Liquor Control Act specifies that it shall be "liberally construed" in order to "protect the safety, welfare, health, peace and morals of the state," among other reasons. ORS 471.030(1)(c). "[P]owers necessary or proper to enable it to carry out fully and effectively all the purposes of [the Act]" are delegated to the Commission. ORS 471.040. Specifically included among the Commission's powers are those listed in ORS 471.730, which provides in pertinent part:

"The functions, duties and powers of the commission include the following:

\* \* \* \* \*

"(5) To adopt such regulations as are necessary and feasible for carrying out the provisions of this

---

[3] "The legislative power of the state, except for the initiative and referendum powers reserved to the people, is vested in a Legislative Assembly, consisting of a Senate and a House of Representatives."

chapter and to amend or repeal such regulations. When such regulations are adopted they shall have the full force and effect of law.

"(6) To exercise all powers incidental, convenient or necessary to enable it to administer or carry out any of the provisions of this chapter."

The Commission's rule-making power is thus quite broad and it has been recognized as such by this court. *Miller v. OLCC,* 42 Or App 555, 600 P2d 954 (1979). But regulations may only be adopted to carry out provisions of the Act, not to change them. The Supreme Court in *Univ. of Ore. Coop v. Dept. of Revenue,* 273 Or 539, 542 P2d 900 (1975), noted that it had "consistently held that an administrative agency may not, by its rules, amend, alter, enlarge or limit the terms of a legislative enactment." The court went on to cite *Gouge v. David,* 185 Or 437, 459, 202 P2d 489 (1949) wherein it had said:

> "A statute which creates an administrative agency and invests it with its powers restricts it to the powers granted. The agency has no powers except those mentioned in the statute. It is the statute, not the agency, which directs what shall be done. The statute is not a mere outline of policy which the agency is at liberty to disregard or put into effect according to its own ideas of the public welfare."

In *Van Ripper v. OLCC,* 228 Or 581, 365 P2d 109 (1961), the court pointed out that the Commission may write rules and enforce them but may not "undertake anything contrary to the statute itself." The Commission's authority extends only so far as to aid in the accomplishments of the Liquor Control Act by "fill[ing] the interstices of the legislation." Before us now is the question whether the Commission, in ruling that malt beverages treated by any method "which produces a malt beverage with microbiological quality comparable to malt beverages treated by heating" satisfies the Act's specification that holders of retail malt beverage licenses, or package store licenses, sell pasteurized products.

Looking to the Liquor Control Act, we note that it nowhere defines "pasteurize." It is not an ambiguous term, however. It is universally recognized to be a process whereby a liquid or food is heated as a means of killing microorganisms. *Webster's Third New International Dictionary* 1652 (unabridged 1971) defines it as "a method devised by Pasteur to check fermentation (as in wine or milk) involving the partial sterilization of a substance (as a fluid) at a temperature and for a length of time that does not greatly change its chemical composition but does destroy many pathogenic organisms and undesirable bacteria through spores and thermoduric organisms (as lactic acid bacteria) survive." In *7 New Encyclopedia Britannica, Micropaedia* 629 (1979) pasteurization is defined as a "heat treatment process that destroys pathogenic microorganisms in certain foods and beverages." In *Stedman's Medical Dictionary* (23d ed, 1976) the process is defined as "the heating of milk, wines, fruit juices, etc., for about 30 minutes at $68°C$ $(154.4°F)$ whereby the living bacteria are destroyed, but the flavor and bouquet is preserved." Though the definitions in these and other authorities are not identical, they are agreed that a necessary part of the process called pasteurization is the application of heat.

There being a plain, unambiguous meaning for the term, it must be accorded that meaning and we are bound by it in our consideration of the OLCC's regulation. *Pearson v. Juras,* 12 Or App 345, 505 P2d 928 (1973). An agency regulation may not conflict with the plain wording of the statute. *Pearson v. Juras.*

The Commission's definition includes processes that truly are pasteurization, but it also comprises processes that, according to the universally understood definition, are not. Defining pasteurization so that nonheat purification methods may be used to treat malt beverages is to ignore what pasteurization really is, and to allow a process which the legislature, by using that term, does not permit. The Commission thus has altered provisions in the Act and exercised

power greater than that which has been delegated to it. We hold sections (1) and (2)(a) and (b) of OAR 845-10-207 to be valid and sections (2)(c) and (3) to be invalid.

Rule upheld in part; invalidated in part.


JOSEPH, J., dissenting

Resisting the almost overwhelming temptation to recite a few of the large number of words, some of them of scientific provenance, that have come to encompass a meaning, scope or understanding which is different from that at their origin, I will simply say that I do not agree that "pasteurization" means only the precise process discovered by Louis Pasteur in about 1865. To be sure, the part of the rule not challenged in this review involves two processes, one of which Pasteur himself would probably not have recognized. Given the broad rule-making power entrusted to the Commission, and the legislature's failure to define the term, I would uphold the rule.