Argued and submitted October 1, 1980, reversed and remanded March 9,
reconsideration denied June 4,
petition for review denied June 23, 1981 (291 Or 151)

**FAJER,**
*Petitioner,*
*v.*
**DEPARTMENT OF HUMAN RESOURCES,**
*Respondents.*

(No. 901, CA 18122)

625 P2d 140

Cecil H. Quesseth, Salem, argued the cause for petitioner. With him on the brief was Quesseth and Donaldson, Salem.

Al J. Laue, Assistant Attorney General, Salem, argued the cause for respondents. With him on the brief were James M. Brown, Attorney General, John R. McCulloch, Jr., Solicitor General, and William F. Gary, Deputy Solicitor General, Salem.

Before Richardson, Presiding Judge, and Thornton and Buttler, Judges.

RICHARDSON, P.J.

## RICHARDSON, P.J.

Petitioner appeals from an order of the Employment Relations Board (Board) upholding action taken by respondents pursuant to ORS 240.572 and Personnel Rule 54-100 (PR 54-100), promulgated by respondent Personnel Division (Division). Petitioner raises three assignments of error: (1) that the portion of ORS 240.572 which authorized rule adoption by the Division violates Article III, § 1, of the Oregon Constitution because it constitutes an unlawful delegation of legislative power; (2) that the rule is invalid because it fails to implement the legislative intent of ORS 240.572; and (3) that the Board erred in its interpretation of ORS 240.572 and its conclusion that the respondent's action was consistent with ORS 240.572 under the circumstances. We reverse and remand.

At the time of this action petitioner had been a state employe for 28 years. His work performance evaluations were excellent to outstanding. In September, 1977, he was employed by the Department of Human Resources (DHR) in a Program Executive 5 (PE 5) position in the classified service. At that time the position was placed in the unclassified service by legislative enactment.[1] He continued in the position until June, 1979, when he was notified by DHR that this unclassified PE 5 position had been eliminated effective July 1, 1979, due to budget reductions. DHR advised him that the agency no longer had any PE 5 positions in the classified service and offered him a demotion in lieu of layoff. Reserving his right to grieve respondent's actions, petitioner accepted a voluntary demotion to the position of Principal Administrative Analyst. As a result of the demotion he received a monthly salary reduction and a reduction in potential retirement benefits. Petitioner's grievance was denied by the Division, and he appealed to the Board. The Board dismissed his petition.

Petitioner's first claim is that the portion of ORS 240.572 which delegates to the Division the authority to promulgate rules to implement the statute constitutes an unlawful delegation of legislative power. Specifically, petitioner points to the absence of any standards in the statute to limit arbitrary agency action.

---

[1] Oregon Laws 1977, ch 271 (now ORS 240.205(4)).

Because we determine the challenged agency rule is inconsistent with the legislature's intent, it is unnecessary to discuss the principles of lawful delegation of legislative power. *See Springfield Education Assn. v. School Dist.,* 290 Or 217, 621 P2d 547 (1980); *Warren v. Marion County,* 222 Or 307, 353 P2d 257 (1960); *Meyer v. Lord,* 37 Or App 59, 586 P2d 367 (1978), *rev den* 286 Or 303 (1979).

Petitioner's second claim is that the rule adopted by the Division does not implement the legislative intent embodied in ORS 240.572:

"An employe whose position is placed in the unclassified service pursuant to ORS 240.205 shall, after termination of service in the unclassified position, *be restored to his or her status in the classified service in accordance with rules adopted by the Division."* (Emphasis added.)

Pursuant to this statutory directive, the Division promulgated PR 54-100:

" *Return to Classified Service from Exempt or Unclassified Service* A regular employe who is appointed to a position in the unclassified or exempt service or a regular employe whose position is placed in the unclassified or exempt service by statute shall, after separation from the unclassified or exempt position, have the right to return to a position in the same agency and in the same class as the position last held in the classified service provided that a request is made within 30 days from the date of separation. Should there be no vacant position available, a lay-off shall occur. Should the employe who is seeking to return to the classified service have the least service credit among those in the class, that employe shall be laid off and his name shall be placed in order of service credit on both the agency layoff list and the reemployment list for the class in which the lay-off occurred. (Ref: ORS 240.570)"

We must determine whether this rule, consistent with ORS 240.572, assured to petitioner that after his termination from unclassified service, he would be restored to his "status in the classified service." To do so, we must determine what the legislature intended by its use of the just quoted phrase.

The legislative history with regard to ORS 240.572 is sparse. The statute was enacted as part of a management reorganization plan presented to the 1977 legislature by

the Executive Department.[2] The purpose of the plan was to allow agency heads greater flexibility in making executive appointments by creating more unclassified positions in state service. In the process, the law was designed to prevent any tampering with career employes and to insure the preservation of the merit system applicable to classified service. In hearings before both houses of the legislature, the Director of the Executive Department offered, in part, the following explanation:

> "* * * I don't think I will read the entire testimony here that I have presented, except to say there are several things, *there are several safeguards, built into this and one is that people who are going into this kind of designation would have the right, if they so chose, to return to their former jobs where they were protected under the classified service. And we think this is important.* A number of people during the past six months have utilized this possibility and we would, we would support that, and that is built into the bill and the administrative rule changes that we would propose as part of the packet. * * *
>
> "* * * * *
>
> "Actually, the present laws provide a return for all people who are employed in the exempt or unclassified service. This bill does not change. It simply reinforces an existing statute. *If the deputy in the example you used is removed through no fault of his own, he would then have bumping rights back to the same classification that he had before.* And it would go to a regular layoff process just as if he were making a reduction in force. He would take into account the other people at that level, their length of service, and their performance appraisal. * * *" (Emphasis added.)

This testimony, along with other similar testimony presented to the legislature, indicates that persons in petitioner's position were afforded two protections: (1) the right to return to classified service; and (2) the right to return to their former jobs or classifications in the classified service. To insure these rights, they had the protection accorded all classified employes, i.e., they could excercise "bumping rights" into their old jobs if they had the necessary service points.

---

[2] The original legislation was presented in Senate Bill 176 and later enacted into law in Oregon Laws 1977, ch 271.

The "present laws" referred to in the testimony noted above are found in ORS 240.570. Like ORS 240.572, this statute regulates the return rights of employes terminated from unclassified service. ORS 240.570 provides:

> "Positions in the unclassified and exempt service may be filled by classified employes upon request of the appointing authority. Any classified employe so appointed shall, after termination of service in an unclassified or exempt position, be restored to his status in the classified service."

As indicated by the language in PR 54-100, the rule was adopted to cover employe transfers in two instances. In the first instance, ORS 240.570, an employe leaves an existing position by appointment to the unclassified service and the former position remains in the classified service. In the latter, ORS 240.572, a person's *position* is *placed* in unclassified service and the position itself necessarily ceases to exist as a position in the classified service. To cover *both* these situations, the rule allows "return to a position in the *same* agency and in the *same* class as the position last held in classified service." In the event no vacancy exists, then the rule adopts the "bumping rights" process applicable to all employes in the classified service.

Petitioner argues the rule does not implement the statutory mandate because it overly restricts the options available to him. He submits restoration to his "status in the classified service" requires an employment in a position equal to his former position in terms of both pay and responsibility, in either the classified or unclassified service, in *any* agency in the state. Should none be available, he submits he should be entitled to a "stay" of his salary during the period of unavailability. Respondents contend the only right given petitioner in ORS 240.572 was given to him in PR 54-100, i.e., return to classified service. He was returned to the classified service, his former position had been eliminated, and he was provided with the only avenue available to him, i.e., to accept a demotion in lieu of layoff or accept a layoff. We conclude the answer lies somewhere between these two positions.

As reflected in the legislative history noted above, the very least ORS 240.572 gave to petitioner were those

rights inherent in the classified service. In this regard, had he never moved from the classified service, and had his position been discontinued, he would have enjoyed greater rights then those accorded in PR 54-100. ORS 240.530 is illustrative:

> "Subject to the rules, a *regular employe* whose *position is discontinued* or reclassified *may be transferred to a vacant position in the same or comparable class, or may elect to accept voluntary transfer to a vacant position for which he is qualified* and have his name placed upon an appropriate reemployment list. An incumbent of a reclassified position may be retained in the position under the new classification, or, advanced thereto if he passes a noncompetitive test for the new position." (Emphasis added.)

Under these circumstances, there would be no limitation that an available position must be in the *same class* or *same agency.* Transfer could be afforded to a *comparable class* and without regard to any specific agency so long as the employe is qualified, has the requisite service points to insure placement, and has the approval of the applicable appointing authorities.[3]

■ ■  An administrative agency may not, by its rules, alter or limit the terms of a legislative enactment. *U. of O. Co-Oper. v. Dept. of Rev.,* 273 Or 539, 550, 542 P2d 900 (1975); *Gouge v. David et al.,* 185 Or 437, 459, 202 P2d 489 (1949); *Joint Council of Teamsters v. OLCC,* 46 Or App 135, 139, 610 P2d 1250, *rev den* 289 Or 337 (1980). Here, the Division has adopted a rule which does limit rights intended to be afforded persons in petitioner's position by ORS 240.572. The rule did not restore petitioner to his "status in the classified service."

The Board's conclusion that PR 54-100 and respondents' action were consistent with the mandate of ORS 240.572 was in error. We therefore reverse and remand the matter to the Board for further proceedings.

Reversed and remanded.

---

[3] PR 46.400 provides:

> "The transfer of a trial service or regular employe in one class to another class or to the same class in another agency having the same salary range may be made with the approval of the appointing authorities concerned and the administrator, if the administrator finds that the employe possesses the qualifications necessary for performance of duties in the new class."