Argued and submitted April 22, affirmed in part; reversed
in part; and remanded for further proceedings August 31, 1981

OREGON EDUCATION ASSOCIATION,
*Petitioner,*

*v.*

EUGENE SCHOOL DISTRICT NO. 4J et al,
*Respondents.*

(CA 19039)

633 P2d 28

Robert D. Durham, Eugene, argued the cause for petitioner. With him on the brief was Kulongoski, Heid, Durham & Drummonds, Eugene.

Joe B. Richards, Eugene, argued the cause for respondent Eugene School District No. 4J. With him on the brief was Luvaas, Cobb, Richards and Fraser, P.C., Eugene.

Al J. Laue, Assistant Attorney General, Salem, argued the cause for respondent Teacher and Standards and Practices Commission. With him on the brief were Dave Frohnmayer, Attorney General, John R. McCulloch, Jr., Solicitor General, and William F. Gary, Deputy Solicitor General, Salem.

Before Richardson, Presiding Judge, and Thornton, and Van Hoomissen, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

Petitioner Oregon Education Association (OEA), a statewide association of teachers, seeks judicial review of a final order of the Teacher Standards and Practices Commission (TSPC). TSPC notified Eugene School District No. 4J (District) that it proposed to forfeit $67,141.25 from the District's Basic School Support Fund allocation because the District had hired "non-certificated" replacements for striking teachers.[1] The District contended the forfeiture was excessive and requested a hearing. OEA's petition for intervention was allowed.[2] At the hearing, OEA contended that TSPC's proposed forfeiture was calculated incorrectly and should have been substantially higher. Following the contested case hearing, TSPC issued its final order fixing the District's forfeiture at $66,141.25. We affirm in part, reverse in part and remand for further proceedings.

The issues on review are: (1) Does a person hold a valid teaching certificate within the meaning of ORS 342.505(2)[3] if that person has only filed an application for

---

[1] ORS 342.173(1):

"Any school district * * * which employs as a teacher, * * * any person not properly certificated and assigned in accordance with the terms specified by the person's certificate shall forfeit in state basic school support funds due the district an amount determined by the Teacher Standards and Practices Commission to not exceed the amount of the salary paid to the person for the time during which the person is employed. * * *"

[2] ORS 183.310(5):

"* * * * *

"(c) [Party means:] Any person requesting to participate before the agency as a party or in a limited party status which the agency determines either has an interest in the outcome of the agency's proceeding or represents a public interest in such result. * * *"

ORS 183.480(1):

"Any person adversely affected or aggrieved by an order or any party to an agency proceeding is entitled to judicial review of a final order, whether such order is affirmative or negative in form. * * *"

There is no standing issue present here. *Compare Oregon Ed. Assoc. v. Teacher Standards and Practices,* 53 Or App 524, 632 P2d 805 (1981).

[3] ORS 342.505(2):

"No hiring or written contract of any teacher is valid unless the teacher, on or before the date employment is to begin, holds a valid teaching certificate."

certification with TSPC, but certification has not yet been granted; (2) Is OAR 584-50-045[4] (TSPC's backdating rule) valid; (3) Are persons employed as teachers when they work on "in-service days"; and (4) Does the word "salary" as used in ORS 342.173(1) include reimbursement for mileage, meals and lodging expenses?

The facts are not disputed. During a September 4-14, 1979, strike, the District recruited personnel to replace striking teachers. Replacements who did not at the time possess valid teacher certificates were asked to complete an application for certification on a form provided by TSPC. Those applications were then forwarded to TSPC for processing. Between twelve to fifteen working days elapsed between the date those applications were received by TSPC and the date TSPC issued and mailed certificates back to the District. Most of the certificates were in fact issued after the applicants had terminated their employment with the District. TSPC staff backdated the certificates of successful applicants to the date the applications were filed with TSPC.[5] The District reported the effective date of such certificates as the date the applications were filed with TSPC, rather than the date the certificates were issued by TSPC.

Most non-certificated persons began working on September 4, 1979. Those employed during the strike began teaching as soon as their applications were completed and forwarded to TSPC. Because no teaching credentials had been issued to those persons, school principals assigned them duties upon assurances by the District's personnel

---

[4] OAR 584-50-045:

"Certificates issued after October 15, 1978 shall be dated with a beginning effective date to be the date upon which the completed application materials as required to grant the initial certificate, reinstatement or renewal are received in the Commission's office. * * *"

[5] Three classes of persons were employed by the District as teachers during the strike: (1) those who were certificated on the date of their employment (OEA does not challenge the employment of such persons), (2) those who were never certificated by TSPC (the District does not here contest any forfeiture resulting from the employment of such persons), and (3) those who were not certificated on the date of their employment, but who were later certificated by TSPC, such certification being backdated to the date of application pursuant to OAR 584-50-045.

department that they were qualified to teach specific subjects, such as English, mathematics, and science.

TSPC's executive secretary provided TSPC with computations of the number of days worked by replacement teachers. According to him, if TSPC used the date of approval of each application as the effective date, as the OEA contends should have been done, instead of the date of application, non-certificated teachers worked 1,597-3/4 teaching days between September 6 and 14, 1979, and, at $95 per day, the forfeiture should have been $151,786.25. Regular classes commenced on the third day of the strike, September 6, 1979. September 4 and 5 were "in-service" days and were paid work days for the replacements. If the two "in-service" days, were included as working days, as OEA contends should have been done, non-certificated teachers worked 1,859-1/4 teaching days between September 4 and 14, 1979, and, at $95 per day, the forfeiture should have been $156,628.75. However, TSPC made a policy decision to exclude the two "in-service" days as days of employment because it found that "in-service" time is not "teaching" under ORS 342.173(1).

When notice of the possible strike was received, the District recruited replacements throughout Oregon. The replacements were asked to indicate whether they needed transportation or housing during the strike, and the District agreed to reimburse them for such expenses. On this basis the District paid non-certificated persons an additional $12,694.31 for meals, mileage and lodging. TSPC excluded this sum from the District's forfeiture computation on the rationale that reimbursement of expenses does not constitute "salary" under ORS 342.173(1).

On review OEA contends TSPC erred: (1) by excluding from its forfeiture computation salary paid to persons employed as teachers during the period when such persons had applied for, but had not been granted, teacher certification; (2) by excluding from its forfeiture computation the sums paid to non-certificated persons employed as teachers on "in-service days"; and (3) by excluding from its forfeiture computation the sums paid to non-certificated persons as reimbursement for mileage, meals and lodging

expenses. The District and TSPC contend: (1) OAR 584-50-045 (TSPC's backdating rule) is within TSPC's statutory authority; (2) "in-service" time is not "teaching" within the meaning of ORS 342.173; and (3) reimbursement of expenses is not "salary" within the meaning of ORS 342.173(1).

■        The threshold question is whether TSPC's practice of certificating teachers *nunc pro tunc* is permissible. We hold that it is not. ORS 342.505(2) provides:

"No hiring or written contract of any teacher is valid unless the teacher, *on or before the date employment is to begin,* holds a valid teaching certificate." (Emphasis added.)

Under this statute, a person must hold a valid certificate issued by TSPC *before* commencing employment as a teacher. It is illegal to hire a non-certificated teacher. *Cooper v. Fair Dismissal Appeals Board,* 31 Or App 521, 570 P2d 1005, *rev den* 281 Or 531 (1977).

■ ■        We find that OAR 584-50-045 conflicts with the clear and unambiguous language of ORS 342.505(2) and that it is therefore invalid. It is elementary that an administrative agency may not, by its rules, alter or limit the clear and unambiguous terms of a statute. *McLain v. Lafferty,* 257 Or 553, 480 P2d 430 (1971); *Fajer v. Dept. of Human Resources,* 51 Or App 105, 111, 625 P2d 140, *rev den* 291 Or 151 (1981); *Joint Council of Teamsters v. OLCC,* 46 Or App 135, 610 P2d 1250, *rev den* 289 Or 337 (1980). TSPC should have included the salaries of those employees whose certificates were backdated in its computation of the number of days worked by non-certificated replacement teachers.

■        Next, we consider whether TSPC erred when it excluded "in-service" days from its forfeiture computation. TSPC reasoned that such days should not be included because the replacement teachers did not have physical contact with students on those days. This rationale is not persuasive. ORS 342.173 mandates a forfeiture for days of non-certificated employment as a *teacher.* It cannot be seriously argued that the replacements were not employed

as teachers on the "in-service" days.[6] Again, the language of the statute is clear and unambiguous. We hold that TSPC should have included the two "in-service" days in its forfeiture computation. *See McPherson v. Employment Division,* 285 Or 541, 591 P2d 1381 (1979).

■     Finally, we agree with TSPC that reimbursement for mileage, meals and lodging expenses does not constitute "salary" under ORS 342.173(1). Salary is fixed compensation paid regularly for services and is synonymous with "wages," which means payment for labor or services, usually according to contract, and on an hourly, daily, or piecework basis. Webster's New Collegiate Dictionary (1977).

Affirmed in part; reversed in part; and remanded for further proceedings.

---

[6] ORS 342.120(8) provides:

" 'Teacher' includes all certificated employes in the public schools * * * who have *direct responsibility* for instruction, * * * and who are compensated for their services from public funds." (Emphasis added.)