On petitioner's petition for attorney fees filed September 21,
and respondents' response to petition for attorney fees filed September 28,
former opinion filed August 31, 1981 (53 Or App 722, 633 P2d 28 (1981)),
petition for attorney fee denied June 22, 1983

## OREGON EDUCATION ASSOCIATION,
### *Petitioner,*
### *v.*
## EUGENE SCHOOL DISTRICT NO.
### 4J et al,
### *Respondents.*
### (CA 19039)
666 P2d 272

*See also* 53 Or App 722, 633 P2d 28.

Robert D. Durham, Eugene, for petition.

Jan Peter Londahl, Assistant Attorney General, Salem, contra.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

Petitioner, the prevailing party in *Oregon Educ. Ass'n v. Eugene School Dist. 4J,* 53 Or App 722, 633 P2d 28 (1981), seeks an award of an attorney fee pursuant to the Oregon Administrative Procedures Act (APA).[1] We deny the petition.

The case involved a challenge by petitioner, the collective bargaining representative of teachers on strike against the respondent District, to the amount of a forfeiture levied against the District from the District's Basic School Support Fund by the respondent Teacher Standards and Practices Commission (TSPC). The forfeiture was based on the District's hiring non-certified replacements for striking teachers and was authorized by ORS 342.173(1). We stated the facts:

> "The facts are not disputed. During a September 4-14, 1979, strike, the District recruited personnel to replace striking teachers. Replacements who did not at the time possess valid teacher certificates were asked to complete an application for certification on a form provided by TSPC. Those applications were then forwarded to TSPC for processing. Between twelve to fifteen working days elapsed between the date those applications were received by TSPC and the date TSPC issued and mailed certificates back to the District. Most of the certificates were in fact issued after the applicants had terminated their employment with the District. TSPC staff backdated the certificates of successful applicants to the date the applications were filed with TSPC.[5] The District reported the effective date of such certificates as the date the applications were filed with TSPC, rather than the date the certificates were issued by TSPC.

----

[5] "Three classes of persons were employed by the District as teachers during the strike: (1) those who were certificated on the date of their employment (OEA does not challenge the employment of such persons), (2) those who were never certificated by TSPC (the District does not here contest any forfeiture resulting from the employment of such persons), and

----

[1] This case, together with several others, has been held in abeyance pending our resolution of two other attorney fee cases remanded to us for reconsideration by the Supreme Court. *See Cook v. Employment Division,* 293 Or 1, 643 P2d 1271 (1982), *on remand Cook v. Employment Division,* 63 Or App 593, 666 P2d 264 (1983); *Brown v. Adult and Family Services,* 293 Or 6, 643 P2d 1266 (1982), *on remand sub nom Davidson v. Employment Division,* 63 Or App 600, 666 P2d 261 (1983).

(3) those who were not certificated on the date of their employment, but who were later certificated by TSPC, such certification being backdated to the date of application pursuant to OAR 584-50-045.

"Most non-certificated persons began working on September 4, 1979. Those employed during the strike began teaching as soon as their applications were completed and forwarded to TSPC. Because no teaching credentials had been issued to those persons, school principals assigned them duties upon assurances by the District's personnel department that they were qualified to teach specific subjects, such as English, mathematics, and science.

"TSPC's executive secretary provided TSPC with computations of the number of days worked by replacement teachers. According to him, if TSPC used the date of approval of each application as the effective date, as the OEA contends should have been done, instead of the date of application, non-certified teachers worked 1,597-3/4 teaching days between September 6 and 14, 1979, and, at $95 per day, the forfeiture should have been $151,786.25. Regular classes commenced on the third day of the strike, September 6, 1979. September 4 and 5 were 'in-service' days and were paid work days for the replacements. If the two 'in-service' days were included as working days, as OEA contends should have been done, non-certificated teachers worked 1,859-1/4 teaching days between September 4 and 14, 1979, and, at $95 per day, the forfeiture should have been $156,628.75. However, TSPC made a policy decision to exclude the two 'in-service' days as days of employment because it found that 'in-service' time is not 'teaching' under ORS 342.173(1)." 53 Or App at 725-26.

Before this court, petitioner contended, *inter alia,* that the forfeiture computation was too low, because (1) TSPC did not include in its computation the salaries paid to teachers whose applications for certification were pending and (2) TSPC also failed to include sums paid to non-certificated persons employed as teachers on "in-service days." TSPC and the District argued that the practice of "backdating" certifications was specifically permitted by a TSPC rule, OAR 584-50-045, that was, in turn, authorized by statute. They further argued that "in-service" time is not "teaching" time within the meaning of the forfeiture statute.

We held against the District and TSPC, and in favor of the petitioner, on both points. We said, in pertinent part,

"We find that OAR 584-50-045 conflicts with the clear and unambiguous language of ORS 342.505(2) and that it is therefore invalid. It is elementary that an administrative agency may not, by its rules, alter or limit the clear and unambiguous terms of a statute. *McLain v. Lafferty,* 257 Or 553, 480 P2d 430 (1971); *Fajer v. Dept. of Human Resources,* 51 Or App 105, 111, 625 P2d 140, *rev den* 291 Or 151 (1981); *Joint Council of Teamsters v. OLCC,* 46 Or App 135, 610 P2d 1250, *rev den* 289 Or 337 (1980). TSPC should have included the salaries of those employees whose certificates were backdated in its computation of the number of days worked by non-certificated replacement teachers.

"Next, we consider whether TSPC erred when it excluded 'in-service' days from its forfeiture computation. TSPC reasoned that such days should not be included because the replacement teachers did not have physical contact with students on those days. This rationale is not persuasive. ORS 342.173 mandates a forfeiture for days of non-certificated employment as a *teacher.* It cannot be seriously argued that the replacements were not employed as teachers on the 'in-service' days.[6] Again, the language of the statute is clear and unambiguous. We hold that TSPC should have included the two 'in-service' days in its forfeiture computation. *See McPherson v. Employment Division,* 285 Or 541, 591 P2d 1381 (1979).

---

[6] "ORS 342.120(8) provides:

' "Teacher" includes all certificated employees in the public schools * * * who have *direct responsibility* for instruction, * * * and who are compensated for their services from public funds.' " 53 Or App at 728.

We reversed and remanded the case for further proceedings. The present petition for attorney fees followed.

Petitioner's request for an award of an attorney fee is based on ORS 183.495:

"Upon judicial review of a final order of an agency when the reviewing court reverses or remands the order it may, in its discretion, award costs, including reasonable attorney fees, to the petitioner to be paid from funds appropriated to the agency."

TSPC, in response, argues, first, that TSPC's interest was—like petitioner's—adverse to the District's interest; second,

that petitioner's efforts will not necessarily change the outcome in this case because TSPC's forfeiture authority is discretionary, *see* ORS 342.173; and, third, that petitioner's expense in this case was a cost of doing business and so should not be recompensed.

Our holding on the merits of this case was made pursuant to ORS 183.482(8)(a), which provides, in pertinent part,

"(8)(a) The court may affirm, reverse or remand the order. If the court finds that the agency has erroneously interpreted a provision of law and that a correct interpretation compels a particular action, it shall:

"* * * * *

"(B) Remand the case to the agency for further action under a correct interpretation of the provision of law.

"* * * * *"

In *Van Gordon v. Ore. State Bd. of Dental Examiners,* 63 Or App 561, 666 P2d 276 (1983) (on petition for attorney fee), we stated, concerning a remand to an agency for errors of this kind:

"* * * The errors in such cases fall into three categories: (1) reasonable but erroneous interpretations of ambiguous statutes, (2) unreasonable interpretations of ambigous statutes and (3) erroneous interpretations of unambiguous statutes." 63 Or App at 568.

As our original opinion made clear, the error in this case was of the third type, *i.e.,* an erroneous interpretation of an unambiguous statute—the statutory language was too clear to permit TSPC reasonably to believe that it had the authority to promulgate and enforce OAR 584-50-045.

We went on to say in *Van Gordon:*

"Where, however, an agency has erroneously interpreted an unambiguous statute, or has given an ambiguous statute a meaning that has no basis in the statute's language, its legislative history, its purposes or its context in a statutory scheme, a fee award may well be warranted. Agencies should be encouraged to look carefully at the laws they administer before applying those laws to the public, and victims of an agency's patently unreasonable interpretation should not have to pay for their efforts to right the agency's wrong. *See, e.g., Schurman v. Bureau of Labor,* 36 Or App 841, 585 P2d 758 (1978). Thus, when we reverse or remand a final order because an

agency has interpreted a statute in an unreasonable manner, we will, as a general rule, award an attorney fee to a prevailing petitioner * * *." (Footnote omitted.) 63 Or App at 568-69.

This case fits within the general rule, unless the circumstances pointed to in TSPC's objections justify an exception. We consider each in turn.

1. TSPC argues that its interests paralleled those of petitioner's—both proposed a forfeiture by the District; they only disagreed as to the amount. This is true, as far as it goes. However, petitioner and TSPC had different interests once it was clear that petitioner would have to seek judicial review in this court to obtain the statutory construction it desired. TSPC, in other words, had had its chance.

2. TSPC argues that, inasmuch as its authority to order a forfeiture is *discretionary,* there is no guarantee that the forfeiture it originally ordered will be increased. This point has particular merit in view of the fact that, as pointed out in the statement of facts, *supra,* the District appears to have specifically relied on TSPC's backdating rule in employing the teachers involved in that part of the controversay.

3. Finally, TSPC argues that, at least for petitioner, the attorney fees incurred here are a "cost of doing business" and, as such, normally not subject to an award under the doctrine of *Polizos v. OLCC,* 40 Or App 135, 594 P2d 1248 (1979).

*Polizos* was a case involving an application for an attorney fee under ORS 183.495 by a party which had successfully obtained reversal and remand of an agency decision denying it a liquor license. In denying an attorney fee, we said:

"A determining criteria in a case such as this should be whether the cost of the administrative litigation would normally be anticipated as a cost of doing business. Here, the cost of the litigation was incurred by a commercial enterprise attempting to expand its business by obtaining a license to do so. Obtaining a license in this situation is a normal commercial activity for which a business would normally be prepared to incur and bear the cost, knowing that the cost may be high if litigation becomes necessary. In this respect, the petitioner is in a different position than, for example, a worker who is denied a health permit. In the absence of exceptional circumstances, we conclude that we will not allow attorney fees even though the agency may participate in the nature of a party

rather than as an arbiter where the costs of the proceedings should be anticipated as a normal cost of doing business." 40 Or App at 137-38.

We now hold that our *Polizos* construction of ORS 183.495 was incorrect, and we overruled it. It will often be true that the expense of a petition for judicial review of an administrative action will be a "cost of doing business." That *description,* however, says nothing about whether there are circumstances in which, because the agency's action which necessitated the petition was unreasonable, the agency should pay a reasonable attorney fee. *Van Gordon v. Ore. State Bd. of Dental Examiners, supra,* establishes, contrary to *Polizos,* that there are such circumstances.

■　　On the merits of the petition, we decline to award an attorney fee for the second reason advanced by TSPC: petitioner has only managed here to require TSPC to reconsider the exercise of its discretion; however, there is no certainty that TSPC will *change* the forfeiture ordered against the District, because the District was obeying TSPC's administrative rule. Thus, while this is a case of an erroneous interpretation of an unambiguous statute—a situation in which we have said that we shall, as a general rule, award a fee, *see Van Gordon v. Ore. State Bd. of Dental Examiners, supra*—we think petitioner's success here is unlikely to affect the eventual outcome of the case. As we stated in *Van Gordon:*

> "* * * [when] we reverse or remand a final order because an agency has interpreted a statute in an unreasonable manner, we shall, as a general rule, award an attorney fee to a prevailing petitioner, at least when it appears that the corrected view of the statute obtained by the petitioner may have a significant impact on the outcome of the case." 63 Or App at 569.

Petition for attorney fee denied.